UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MOISES DAVID BONILLA MEJIA,

Petitioner,

v.

LAURA HERMOSILLO, et al.,

Respondents.

Case No. 2:25-cv-02196

ORDER GRANTING PETITIONER'S MOTION FOR AN EMERGENCY TEMPORARY RESTRAINING ORDER

## I. INTRODUCTION

Before the Court is petitioner Moises David Bonilla Mejia's ("Bonilla") motion for an emergency temporary restraining order ("TRO"). Dkt. 2. Bonilla seeks to restrain Respondents[1] from removing or transferring him from the Western District of Washington before a final removal order and a full and fair hearing of his claims. *Id.* For the following reasons, Bonilla's motion is GRANTED.

[1] Respondents include Laura Hermosillo, ICE ERO Seattle acting Field Office Director; Bruce Scott, Warden, Northwest ICE Processing Center; Kristi Noem, Secretary, United States Department of Homeland Security; Pamela Bondi, United States Attorney General; and United States Department of Homeland Security (collectively "Respondents").

## II. BACKGROUND

Bonilla, his wife, and their two children entered the United States on March 29, 2024. Dkt. 9 at 2; *see* Dkt. 2-1 at 47–50. They were arrested by United States Border Patrol agents on that same day and released several days later. *Id.* Respondents initiated removal proceedings against Bonilla and his family, charging them with removability under Immigration and Nationality Act ("INA") sections 212(a)(7)(a)(i)(I) and 212(a)(6)(A)(i). Dkt. 10-1 at 2; Dkt. 9 at 2. Bonilla's wife applied for asylum on behalf of the entire family, and they appeared for all their preliminary hearings before the immigration courts. *See* Dkt. 2-1 at 1–2, 47–50, 87–95; Dkt. 9 at 3.

A final merits hearing on their asylum application was scheduled for 8:30 AM on June 16, 2025. Dkt. 9 at 3. However, because of the illness of one of their children the night before, unexpected lack of childcare, heavy traffic due to the influx of tourists for the FIFA Club World Cup, the presence of community protesters outside the Seattle Immigration Court, and delays in passing through security, Bonilla and his family arrived at their courtroom late with the courtroom's door closed and locked.[2] Dkt. 2-1 at 23–25, 33–39. While waiting for Bonilla and his family to appear, the immigration judge ("IJ") issued a removal order *in absentia*, ordering Bonilla and his family's removal to Honduras. Dkt. 2-1 at 1–2.

On July 18, 2025, Bonilla and his family moved to rescind the removal order issued *in absentia* and reopen their removal proceedings under INA § 240(b)(5). Dkt. 2-1 at 9–18. On July 29, 2025, the IJ denied the motion, finding that they "failed to demonstrate that any exceptional circumstances outside of their control justify their failure to appear." *Id.* at 71. On August 19,

[2] The parties disagree as to the length of Bonilla and his family's lateness, 12 minutes according to Bonilla, or 16–20 minutes according to Respondents and the IJ's order denying the motion to reopen. Dkt. 2-1 at 23–25, 70; Dkt. 8 at 3. This distinction is not relevant to the outcome of the motion.

2025, Bonilla and his family filed a notice of appeal of the IJ's denial of their motion. *Id.* at 77–86. That appeal is pending before the BIA.

Bonilla was arrested after visiting the Tukwila office for ICE's Intensive Supervision Appearance Program on November 3, 2025. Dkt. 2 at 3. Unable to locate Bonilla after his arrest, his counsel reached out to Respondents and learned that he was being detained at NWIPC. Dkt. 2-1 at 100. His counsel asked whether he would be "scheduled for removal in the next 48 hours," and was informed that "NWIPC has three flights that leave regularly" and if they wanted to take any legal action, it "would need to be done as soon as possible." *Id.* at 99.

Bonilla filed a habeas petition and the instant motion for a TRO on November 4, 2025. Dkts. 1–2. The TRO was provisionally granted pending full briefing. Dkt. 3. Based on the parties' agreed schedule, Dkt. 6, a response to the motion was filed by Respondents on November 7, 2025. Dkt. 8. Bonilla's reply was filed on November 13, 2025. Dkt. 11.

## III. LEGAL STANDARD

A TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (the standard for a TRO is "substantially identical" to the standard for a preliminary injunction). A plaintiff seeking a TRO must show: (1) they are likely to succeed on the merits, (2) the potential for irreparable harm absent preliminary relief, (3) the balance of equities favors injunction, and (4) the relief sought is in the public interest. *Winter*, 555 U.S. at 20 (the "*Winter* factors"); *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009). "Likelihood of success on the merits is a threshold inquiry and is the most important factor." *Simon v. City & Cnty. of San Francisco*, 135 F.4th 784, 797 (9th Cir. 2025) (citation omitted).

## IV. DISCUSSION

With his motion for a TRO, Bonilla seeks to restrain Respondents from removing him or transferring him from the Western District of Washington during the pendency of his habeas proceedings. Dkt. 2 at 1; *see* Dkt. 2-2. The Court will consider each of the *Winter* factors in turn.

### A. Bonilla's claims are likely to succeed on the merits.

Bonilla's habeas petition contains two claims, one under the Immigration and Nationality Act (INA) and one under the Fifth Amendment's Due Process Clause. Dkt. 1 at 13–15. He argues that he is likely to succeed on those claims because Respondents are seeking to remove him from the United States without a final removal order, in violation the INA and his right to Due Process. Dkt. 2 at 4–6. In response, Respondents argue that Bonilla's habeas claims are unlikely to succeed because the Court lacks subject matter jurisdiction over Bonilla's petition. Dkt. 8 at 4–9. For reasons that will become readily apparent, the Court must first consider whether Bonilla's removal order *in absentia* is final.

#### *1. Bonilla's removal order is not final.*

In *Cui v. Garland*, 13 F.4th 991, 996 (9th Cir. 2021), the Ninth Circuit considered the question of finality when applied to removal orders issued *in absentia*. The *Cui* court first noted that, generally, removal orders become final "upon the earlier of (i) a determination by the [BIA] affirming such order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the [BIA]." *Id.* (quoting 8 U.S.C. § 1101(a)(47)(B)). The court then noted that removal orders issued *in absentia*, unlike removal orders generally, "may not be appealed to the BIA without first filing a motion to reopen the order before the IJ within 180 days of the order." *Id.* (citing 8 U.S.C. § 1229a(b)(5)(C)(i)). Given the 180-day period, the *Cui* court concluded that removal orders issued *in absentia* become "final at the end of the 180-day period" if no motion to reopen is filed or after BIA review. *Id.*

Respondents' jurisdictional arguments depend, in large part, on this Court disregarding *Cui's* holding, which they ask the Court to do. Dkt. 8 at 9–10. Respondents argue that Bonilla should not be able to rely on *Cui* because the decision was "contrary to law." *Id.* at 9. But while Respondents are free to preserve an argument for appeal that *Cui* was wrongly decided, neither they nor this Court are free to disregard it. "This Court is bound to follow Supreme Court and Ninth Circuit precedent under the principle of stare decisis." *Johnson v. City of Seattle*, 385 F. Supp. 2d 1091, 1098 n.5 (W.D. Wash. 2005) (citing *Hart v. Massanari*, 266 F.3d 1155, 1168, 1175 (9th Cir. 2001)). The idea that Respondents could remove Bonilla from the United States by simply ignoring *Cui* because they disagree with it would be antithetical to the rule of law. In their return to Bonilla's habeas petition, the Court expects Respondents to clarify the nature of their argument regarding *Cui* consistent with their obligations under Federal Rule of Civil Procedure 11(b)(2).

Bonilla's removal order was issued *in absentia* on June 16, 2025. Dkt. 2-1 at 1. On July 18, 2025, Bonilla and his family moved to reopen. *Id.* at 9–18. On July 29, 2025, the IJ denied the motion. *Id.* at 71. On August 19, 2025, Bonilla and his family filed a timely notice of appeal of the IJ's denial of their motion. *Id.* at 77–86. That appeal is pending before the BIA. Accordingly, Bonilla's removal order issued *in absentia* is not final. The Court will now consider whether the jurisdictional issues presented by Respondents will affect whether Bonilla's claims are likely to succeed on the merits.

*2. The Court has jurisdiction over Bonilla's habeas claims.*

Bonilla is seeking habeas relief pursuant to 28 U.S.C. § 2241. Respondents argue Bonilla's claims are unlikely to succeed on the merits because the Court lacks subject matter jurisdiction to consider Bonilla's claims under 8 U.S.C. §§ 1252(g), 1252(a)(5), and 1252(b)(9). Dkt. 8 at 4–9. Therefore, according to Respondents, "the appropriate forum for [Bonilla] to

challenge his *in absentia* removal order is through the administrative process or the Ninth Circuit," not the district courts. *Id.* at 7. In response, Bonilla argues that 8 U.S.C. §§ 1252(g), 1252(a)(5), and 1252(b)(9) "are inapplicable because [he] does not have a *final* order of removal nor is he seeking review of the IJ denial." Dkt. 11 at 6 (emphasis added). The Court agrees with Bonilla.

Section 1252(g) does not bar this Court's review of Bonilla's claims because his order of removal is not final. 8 U.S.C. § 1252(g) states:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), ... no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

In *Arce v. United States*, 899 F.3d 796 (9th Cir. 2018), the Ninth Circuit considered Section 1252(g) as it applied to a claim about the execution of a removal order pending a stay of removal. *Id.* at 799–800. The *Arce* court concluded that the removal order was not final, given the stay, and it "falls outside of the statute's jurisdiction-stripping reach." *Id.* at 800. "Where the Attorney General totally lacks the discretion to effectuate a removal order," as she does when there is no final removal order, "§ 1252(g) is simply not implicated." *Id.* at 801. Like *Arce*, there is no final removal order for Bonilla, and Section 1252(g) does not bar this Court's review of his claims.

Sections 1252(a)(5) and (b)(9) do not bar this Court's review of Bonilla's claims for the same reasons. Under section 1252(a)(5), a petition for review is "the sole and exclusive means for judicial review of an order of removal." Section 1252(b)(9) is a "'zipper clause' that consolidates all 'questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien' into a petition for review.'" *Ibarra-Perez v. United States*, 154 F.4th 989, 1000 (9th Cir. 2025). Together, they "channel claims into the petition-for-review process,"

and give judicial review of a final removal order solely to the circuit courts. *Id.* at 999. However, sections 1252(a)(5) and (b)(9) do not apply because Bonilla is not seeking review of a final removal order with his habeas claims. Instead, Bonilla is seeking the vindication of his legal right to not be removed before a final removal order has been issued and to have an opportunity to be heard before removal and re-detention. Dkt. 1 at 16; *Ibarra-Perez*, 154 F.4th at 1000 ("Section 1252(a)(5) does not apply because Ibarra-Perez does not seek review of his removal order" and "§ 1252(b)(9) . . . does not bar claims that are 'independent of or collateral to the removal process'") (quoting *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1032 (9th Cir. 2016)).

The Court concludes that 8 U.S.C. §§ 1252(g), 1252(a)(5), and 1252(b)(9) do not affect the likelihood of success for Bonilla's claims on their merits. The Court will now consider the substance of Bonilla's claims and whether they are likely to succeed on the merits.

*3. Bonilla's INA and Due Process arguments are likely to succeed on their merits.*

Bonilla's habeas petition contains two counts. Dkt. 1 at 13–15. Count one alleges that Respondents' attempt to remove him from the United States before obtaining a final removal order violates the INA. *Id*. at 13. Given his pending appeal before the BIA of an *in absentia* removal order, Bonilla has a strong claim that his immediate removal would violate the INA, specifically 8 U.S.C. § 1231(a)(1)(B) as interpreted by the Ninth Circuit under *Cui*.

Count two alleges that Respondents' attempt to remove him from the United States before obtaining a final removal order violates his Fifth Amendment right to due process. *Id.* at 14–15. The Fifth Amendment entitles noncitizens "to due process of law in the context of removal proceedings." *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025) (quoting *Trump v. J.G.G.*, 604 U.S. ___, 145 S. Ct. 1003, 1006 (2025) (per curiam)). Given the practical impossibility of pursuing an asylum claim and presenting evidence in supporting that claim from outside the

United States, *see* 8 U.S.C. §§ 1101(a)(42), 1158(a)(1), Bonilla also has a strong claim that his immediate removal would strip him of his ability to pursue his asylum claim and thus violate his constitutional right to due process.

Bonilla has shown that he is likely to succeed on the merits of his habeas petition. This weighs in favor of granting a TRO.

**B. Bonilla is likely to suffer irreparable harm in the absence of a TRO.**

The irreparable harm standard "requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is likely in the absence of an injunction." *Winter*, 555 U.S. at 22. It must be more than a mere "possibility of irreparable harm." *Id.*

Bonilla contends that if he is removed before his appeal has concluded, he would likely be denied an opportunity to return to pursue his asylum claims and separated from his family members. Dkt. 11 at 10. Respondents argue that Bonilla has not shown that he will likely suffer irreparable injury without the TRO and that he makes only a showing of a "possibility." Dkt. 8 at 10. Respondents contend this is because Bonilla has not shown that he will succeed on his appeal of the IJ's denial of his motion to reopen or that his removal "categorically irreparable." *Id.*

Bonilla has shown that his removal before a final removal order would likely cause him irreparable harm. Irreparable harm can come from separation from his two children and wife. *Washington v. Trump*, 847 F.3d 1151, 1169 (9th Cir. 2017) ("[S]eparated families . . . are substantial injuries and even irreparable harms."). A violation of Bonilla's Fifth Amendment right to due process is also an irreparable harm. *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'") (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). This too leans in favor of granting a TRO.

**C. The "balance of equities" and "public interest" tip in Bonilla's favor.**

The final two factors, which involve balancing the equities and considering the public interest, merge when the Government is a party to a case. *Padilla v. Immigr. & Customs Enf't*, 953 F.3d 1134, 1141 (9th Cir. 2020) (citation omitted). Bonilla argues that he "faces a weighty hardship: loss of liberty, deprivation of the right to remain in the U[nited] S[tates] pending an asylum application, deprivation of the right to apply for asylum, and separation from his family," but Respondents face no hardship as all they must do is allow him to continue pursuing his asylum application pending a decision by the BIA. Dkt. 11 at 10. Additionally, his claims involve his Constitutional rights and a government policy "inconsistent with federal law," which "strongly tips the balance of equities and public interest factors in favor" of granting a TRO. Dkt. 11 at 11.

Respondents argue that the balance of equities and public interest weigh "decisively" against Bonilla's request for a TRO because he "asks this Court to enjoin the enforcement of a final removal order" and it "is well settled that the public interest in enforcement of United States' immigration laws is significant." Dkt. 8 at 11–12 (citing *Blackie's House of Beef, Inc. v. Castillo*, 659 F.2d 1211, 1221 (D.C. Cir. 1981)).

The final two factors lean in favor of Bonilla. Again, according to *Cui*, since Bonilla's order of removal is not final, he is not asking the Court to "enjoin the enforcement of a final removal order." *See supra*. In the balance of equities, it costs the Respondents very little to allow Bonilla to see his appeal through. If his removal order becomes final, then Respondents may carry out Bonilla's removal. Additionally, "there is a public interest in preventing [noncitizens] from being wrongfully removed." *Nken v. Holder*, 556 U.S. 418, 436 (2009). It is "always in the public interest to prevent the violation of a party's constitutional rights." *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 731 (9th Cir. 2022).

## V. CONCLUSION

All four factors lean in favor of granting Bonilla's request for a TRO. Accordingly, the Court ORDERS as follows:

1. The motion for temporary restraining order (Dkt. 2) is GRANTED.

2. Respondents, including their officers, agents, servants, employees, attorneys, or others acting on their behalf, are ENJOINED from removing Petitioner from the United States or from the Western District of Washington pending further Order of this Court.

3. This temporary Order expires December 19, 2025 unless extended by this Court. *See Abuzeide for Est. of Dane v. Openroad Auto Grp, Inc.*, 2017 WL 8727861, at *1 (W.D. Wash. Apr. 27, 2017) (14-day limit for TROs does not apply when they are issued with notice and full opportunity to be heard). The Court anticipates that it can rule on the underlying habeas petition within that time. Should an extension be necessary, the Court will allow the parties to be heard on whether to convert the TRO into a preliminary injunction.

4. Respondents have not requested a bond and the Court waives the bond requirement under Federal Rule of Civil Procedure 65(c).

Dated this 19th day of November, 2025.

Tiffany M. Cartwright
United States District Judge