1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8

MOISES DAVID BONILLA MEJIA,

9
                        Petitioner,

10
        v.

11
LAURA HERMOSILLO, et al.,

12
                        Respondent.

13

Case No. 2:25-cv-02196-TMC

ORDER GRANTING PETITIONER'S
WRIT OF HABEAS CORPUS

14

## I.    INTRODUCTION

15      Petitioner Moises David Bonilla Mejia's ("Bonilla") is an individual who is detained at

16  the Northwest Immigration and Customs Enforcement Processing Center ("NWIPC") in

17  Tacoma, Washington. Dkt. 1 ¶ 1. Bonilla was detained by United States Immigration and

18  Customs Enforcement ("ICE") on November 3, 2025 under 8 U.S.C. § 1231(a) to facilitate his

19  removal from the United States based on a removal order issued *in absentia* by an Immigration

20  Judge ("IJ") on June 16, 2025. Dkt. 9 at 3–4.

21      Before the Court is Bonilla's petition for writ of habeas corpus pursuant to 28 U.S.C.

22  § 2241. Dkt. 1. Bonilla's petition also invokes this Court's federal question jurisdiction under 28

23  U.S.C. § 1331. Dkt. 1 ¶ 12. Bonilla argues that his detention and Respondents' efforts to remove

24  him from the country violate the Immigration and Nationality Act ("INA") and the Due Process

Clause of the United States Constitution because he does not yet have a final removal order and he was not provided any notice or opportunity to be heard before he was re-detained. Dkt. 1 at 13–14. Bonilla seeks release from custody and an injunction prohibiting his re-detention absent notice and an opportunity to be heard. *Id*. at 15–16. On November 19, 2025, this Court entered a temporary restraining order prohibiting Respondents[1] from removing Bonilla from the country or the Western District of Washington during these habeas proceedings. Dkt. 13.

Because Federal Respondents now concede that under binding Ninth Circuit precedent, Bonilla's removal order is not final, and they do not dispute that Bonilla had no notice or opportunity to be heard before his re-detention, the Court GRANTS the habeas petition and ORDERS Respondents to release Bonilla from custody within ONE day of this Order. The Court also grants Bonilla's request for injunctive relief as set forth in the conclusion of this Order.

## II.    BACKGROUND

Bonilla, his wife, and their two children entered the United States on March 29, 2024. Dkt. 9 at 2; *see* Dkt. 2-1 at 47–50. They were arrested by United States Border Patrol agents on that same day and released several days later. *Id.* Respondents initiated removal proceedings against Bonilla and his family, charging them with removability under INA sections 212(a)(7)(a)(i)(I) and 212(a)(6)(A)(i). Dkt. 10-1 at 2; Dkt. 9 at 2. Bonilla's wife applied for asylum on behalf of the entire family, and they appeared for all their preliminary hearings before the immigration courts. *See* Dkt. 2-1 at 1–2, 47–50, 87–95; Dkt. 9 at 3.

---

[1] The United States Attorney's Office has appeared on behalf of Respondents Laura Hermosillo, ICE ERO Seattle acting Field Office Director; Kristi Noem, Secretary, United States Department of Homeland Security; Pamela Bondi, United States Attorney General; and United States Department of Homeland Security (collectively "Federal Respondents"). Respondent Bruce Scott, Warden, Northwest ICE Processing Center has not appeared.

A final merits hearing on their asylum application was scheduled for 8:30 AM on June 16, 2025. Dkt. 9 at 3. However, because of the illness of one of their children the night before, unexpected lack of childcare, heavy traffic due to the influx of tourists for the FIFA Club World Cup, the presence of community protesters outside the Seattle Immigration Court, and delays in passing through security, Bonilla and his family arrived at their courtroom late with the courtroom's door closed and locked. Dkt. 2-1 at 23–25, 33–39. While waiting for Bonilla and his family to appear, the IJ issued a removal order *in absentia*, ordering Bonilla and his family's removal to Honduras. Dkt. 2-1 at 1–2.

On July 18, 2025, Bonilla and his family moved to rescind the removal order issued *in absentia* and reopen their removal proceedings under INA § 240(b)(5). Dkt. 2-1 at 9–18. On July 29, 2025, the IJ denied the motion, finding that they "failed to demonstrate that any exceptional circumstances outside of their control justify their failure to appear." *Id.* at 71. On August 19, 2025, Bonilla and his family filed a notice of appeal of the IJ's denial of their motion. *Id.* at 77–86. That appeal is pending before the BIA.

Bonilla was arrested after visiting the Tukwila office for ICE's Intensive Supervision Appearance Program on November 3, 2025. Dkt. 2 at 3. Unable to locate Bonilla after his arrest, his counsel reached out to Respondents and learned that he was being detained at NWIPC. Dkt. 2-1 at 100. His counsel asked whether he would be "scheduled for removal in the next 48 hours," and was informed that "NWIPC has three flights that leave regularly" and if they wanted to take any legal action, it "would need to be done as soon as possible." *Id.* at 99.

Bonilla filed the instant habeas petition and a motion for a temporary restraining order ("TRO") on November 4, 2025. Dkts. 1–2. Bonillo's TRO motion sought an order retraining Respondents from removing him from the Western District of Washington during the pendency of his habeas proceeding. Dkt. 2. That request was provisionally granted, Dkt. 3, and extended,

1   Dkt. 4. Respondents filed their response to the habeas petition on November 21, 2025. Dkt. 14.

2   Bonilla filed his traverse on November 24, 2025. Dkt. 17.

3                          III.    LEGAL STANDARDS

4        "Writs of habeas corpus may be granted by...the district courts...within their respective

5   jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by the preponderance of the

6   evidence that they are "in custody in violation of the Constitution or laws or treaties of the

7   United States." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

8        The federal courts have "long recognized the existence of an implied cause of action

9   through which plaintiffs may seek equitable relief to remedy a constitutional violation." *Roman*

10  *v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020). A plaintiff seeking a permanent injunction must

11  demonstrate (1) that he has suffered an irreparable injury; (2) that remedies available at law, such

12  as monetary damages, are inadequate to compensate for that injury; (3) that, considering the

13  balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and

14  (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v.*

15  *MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). "Once a [constitutional] right and a violation

16  have been shown, the scope of a district court's equitable powers to remedy past wrongs is

17  broad, for breadth and flexibility are inherent in equitable remedies." *Roman*, 977 F.3d at 942

18  (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)).

19                          IV.    DISCUSSION

20       Bonilla's habeas petition contains two claims, one under the INA and one under the Fifth

21  Amendment's Due Process Clause. Dkt. 1 at 13–15. With his first claim, Bonilla argues that his

22  removal from the United States prior to a final removal order violates the INA. *Id.* at 13. With

23  his second claim, Bonilla argues that his re-detention without notice and a pre-deprivation

24

hearing violates his rights under the Due Process Clause of the Fifth Amendment. *Id.* at 14–15. The Court will consider the issue of his removal and his re-detention in turn.

### A.    Bonilla may not be detained under 8 U.S.C. § 1231(a) or removed from the United States because his removal order is not final.

As Federal Respondents acknowledge, ICE detained Bonilla "pursuant to 8 U.S.C. § 1231(a) to execute his removal order." Dkt. 14 at 1. Under the INA, "[t]he removal period begins" on the "date [Bonilla's] order of removal becomes administratively final." 8 U.S.C. § 1231(a)(1)(B)(i); *Johnson v. Guzman Chavez*, 594 U.S. 523, 528 (2021). Bonilla argues that, under *Cui v. Garland*, 13 F.4th 991 (9th Cir. 2021), his removal order is not final and removing him from the United States without a final removal order would violate the INA. Dkt. 1 at 3. Although Respondents argue that *Cui* was wrongly decided, they "do not dispute that *Cui* is a valid decision that is binding on this Court." Dkt. 14 at 2. Respondents also agree that "the issue in this case is whether the *in absentia* removal order is a final order of removal." *Id.* at 1.

In *Cui*, the Ninth Circuit considered the question of finality when applied to removal orders issued *in absentia*. 13 F.4th at 996. The *Cui* court first noted that, generally, removal orders become final "upon the earlier of (i) a determination by the [BIA] affirming such order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the [BIA]." *Id.* (quoting 8 U.S.C. § 1101(a)(47)(B)). The court then noted that removal orders issued *in absentia*, unlike removal orders generally, "may not be appealed to the BIA without first filing a motion to reopen the order before the IJ within 180 days of the order." *Id.* (citing 8 U.S.C. § 1229a(b)(5)(C)(i)). Given the 180-day period, the *Cui* court concluded that removal orders issued in absentia become "final at the end of the 180-day period" if no motion to reopen is filed or after BIA review. *Id.*

Bonilla's removal order was issued *in absentia* on June 16, 2025. Dkt. 2-1 at 1. On July 18, 2025, Bonilla and his family moved to reopen. *Id.* at 9–18. On July 29, 2025, the IJ denied the motion. *Id.* at 71. On August 19, 2025, Bonilla and his family filed a timely notice of appeal of the IJ's denial of their motion. *Id.* at 77–86. Because that appeal is pending before the BIA, Bonilla's removal order issued *in absentia* is not final. Under the INA, "[t]he removal period begins" on the "date [Bonilla's] order of removal becomes administratively final." 8 U.S.C. § 1231(a)(1)(B)(i). Therefore, Bonilla's removal period has not begun, and he may not yet be detained under 8 U.S.C. §1231(a) or removed from the United States.

**B.    Bonilla's re-detention without written notice and a pre-deprivation hearing violates his rights under the Due Process Clause of the Fifth Amendment.**

Before his re-detention on November 3, 2025, Federal Respondents had permitted Bonilla to live in the community during his removal proceedings under an order of supervision. *See* Dkt. 9 at 2; Dkt. 17-1 at 1. Although Federal Respondents address only the effort to detain Bonilla under section 1231, their supporting declaration from Deportation Officer Madison Piersoll states that Bonilla was also detained based on "Alternative to Detention ('ATD') violations." Dkt. 9 at 4. Bonilla argues that prior to his re-detention, the Due Process Clause requires Respondents to provide "written notice and a pre-deprivation hearing before a neutral decisionmaker to determine whether re-detention is warranted based on danger or flight risk." Dkt. 1 at 15. Bonilla contends that because he was not provided notice or a hearing before ICE took him into custody, the Court must order his release and prohibit his future re-detention without due process. *Id.* at 15–16. Respondents have provided no response. *See* Dkt. 14.

"*Mathews* remains a flexible test" applicable to the "immigration detention context." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022) (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976) and *Landon v. Palsencia*, 459 U.S. 21, 34 (1982))). "Under *Mathews*, the

'identification of the specific dictates of due process generally requires consideration of three distinct factors.'" *Id.* (quoting *Mathews*, 424 U.S. at 334–35). "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. The Court will consider the three *Mathews* factors in order.

> 1.    *Bonilla has a substantial "private interest" in his freedom.*

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "Courts in this circuit have found that the government's subsequent release of an individual from detention creates an implicit promise that the individual's liberty will be revoked only if they fail to abide by the conditions of their release." *Ramirez Tesara v. Wamsley*, --- F. Supp. 3d ---, No. 2:25-CV-01723-MJP-TLF, 2025 WL 2637663, at *3 (W.D. Wash. Sept. 12, 2025) (citation modified).

After being released "approximately 18 months ago," Bonilla and his family laid roots in Washington State. Dkt. 17 at 3; Dkt. 17-1 ¶ 4. Bonilla worked as a mechanic and provided the primary income for his family. Dkt. 17-1 ¶ 4. Since his detention, his family is struggling to afford food. *Id.* ¶ 13. These actions "since his initial release show that [Bonilla] has not only reasonably relied on [his liberty] interest, but that the interest is weighty." *Ramirez Tesara*, 2025 WL 2637663, at *3. The first *Mathews* factor leans in favor of Bonilla.

> 2.    *The risk of erroneous deprivation is high.*

"[R]e-detainment without a hearing results in a risk of erroneous deprivation of [one's] protected interest." *Ramirez Tesara*, 2025 WL 2637663, at *4. The BIA, in *Matter of Sugay*, 17

I. & N. Dec. 637, 640 (B.I.A. 1981), held that the revocation of release requires a change of circumstances since the noncitizen was initially released. More specifically, a material change in circumstances as to whether "the noncitizen poses a danger to the community or an unreasonable risk of flight." *United States v. Cisneros*, No. 19-CR-00280-RS-5, 2021 WL 5908407, at *3 (N.D. Cal. Dec. 14, 2021) (citing *In re Guerra*, 24 I. & N. Dec. 37 (BIA 2006)). The Ninth Circuit and its lower courts have adopted *Sugay's* limit. *See Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021); *see also Ledesma Gonzalez v. Bostock*, No. 2:25-CV-01404-JNW-GJL, 2025 WL 2841574, at *5 (W.D. Wash. Oct. 7, 2025).

It is not disputed that Bonilla was once at liberty. It is also not disputed that no re-detention process was given to Bonilla. Federal Respondents have not provided any evidence either to oppose Bonilla's Due Process claim or to support his re-detention based on alleged violations of the Alternatives to Detention program. The second *Mathews* factor leans in favor of Bonilla.

                    3.     *The Government's interest in detention without a hearing is minimal.*

Finally, the Court must consider "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Matthews*, 424 U.S. at 335. "[T]he Government's interest in re-detaining non-citizens previously released without a hearing is low." *Ledesma Gonzalez*, 2025 WL 2841574, at *8 (citing *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019)). Respondents provide no arguments or insight into what burdens a re-detention hearing would impose. It is assumed that "requiring pre-detention process would present *some* administrative burden." *Id.* However, given "the high risk of erroneous deprivation" and "the fundamental liberty interest at stake," the complete absence of pre-deprivation process Federal Respondents provided to Bonilla is "constitutionally deficient." *Id.* The last factor leans in favor of Bonilla.

1     With all *Matthews* factors leaning in Bonilla's favor, the Court finds that Bonilla's

2    continued detention without advanced notice and a re-detention hearing violates his rights under

3    the Due Process Clause of the Fifth Amendment.

4        **C.    The Court may grant injunctive relief.**

5     In addition to his release from custody, Bonilla seeks an injunction prohibiting his re-

6    detention during the pendency of his removal proceedings absent notice and a pre-deprivation

7    hearing. Dkt. 1 at 16. While Ninth Circuit authority is unclear regarding the scope of injunctive

8    relief available in response to habeas claims, so long as a habeas petitioner has also invoked the

9    Court's equitable power through its general federal question jurisdiction, the Court has broad

10   authority to tailor equitable relief to remedy the underlying constitutional violation. *Roman v.*

11   *Wolf*, 977 F.3d 935, 941–42 (9th Cir. 2020).

12     "Courts have long recognized the existence of an implied cause of action through which

13   plaintiffs may seek equitable relief to remedy a constitutional violation." *Id.* at 941. Where

14   habeas petitioners raise Due Process claims and have also invoked the Court's jurisdiction under

15   28 U.S.C. § 1331, the Court has "the authority both to entertain [Petitioner's] constitutional

16   challenges and to grant injunctive relief in response to them," "irrespective of the accompanying

17   habeas petition." *Id.* at 941–42. "Once a [constitutional] right and a violation have been shown,

18   the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and

19   flexibility are inherent in equitable remedies." *Id.* at 942 (quoting *Swann v. Charlotte-*

20   *Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)).

21     A plaintiff seeking a permanent injunction must demonstrate (1) that he has suffered an

22   irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate

23   to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff

24   and defendant, a remedy in equity is warranted; and (4) that the public interest would not be

disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Bonilla meets this standard. He has shown that he suffered irreparable injuries for which monetary damages are likely unavailable or inadequate to compensate him: his unlawful detention, violation of his due process rights, and separation from his family, for whom he is the primary source of income. *Washington v. Trump*, 847 F.3d 1151, 1169 (9th Cir. 2017) ("[S]eparated families . . . are substantial injuries and even irreparable harms."); *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'") (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). He is likely to suffer that injury again if re-detained without the protections required by the Due Process clause. The balance of equities tips sharply in Bonilla's favor, because his interest in avoiding the unlawful deprivation of his liberty outweighs the minimal burden on Federal Respondents to provide notice and an opportunity to be heard if they wish to re-detain him. Finally, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 731 (9th Cir. 2022) (citation omitted).

## V.    CONCLUSION

For the reasons explained above, the Court ORDERS as follows:

1.    The petition for writ of habeas corpus (Dkt. 1) is GRANTED.

2.    Within ONE day of this Order, Respondents must release Petitioner Moises David Bonilla Mejia from custody subject to the terms of his most recent order of supervision.

3.    Respondents, and their officers, agents, employees, attorneys, or others acting on their behalf, are ENJOINED from re-detaining Bonilla during the pendency of his

removal proceedings based on alleged violations of the terms of his supervision absent written notice and a pre-detention hearing in Immigration Court.

4.      This injunction does not affect Respondents' ability to detain and remove Bonilla if his removal order becomes administratively final.

Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 26th day of November, 2025.

Tiffany M. Cartwright
United States District Judge